UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

CALVIN LITCHFIELD,

        Plaintiff,

v.                                                                                                   Case No. 3:20-cv-907-JRK

KILOLO KIJAKAZI,
Acting Commissioner of Social
Security,[1]

        Defendant.

_____

# OPINION AND ORDER[2]

## I.  Status

Calvin Litchfield ("Plaintiff") is appealing the Commissioner of the Social Security Administration's ("SSA('s)") final decision denying his claim for disability insurance benefits ("DIB"). Plaintiff's alleged inability to work is the result of a herniated disc in his back and a rotator cuff issue. See Transcript of Administrative Proceedings (Doc. No. 15; "Tr." or "administrative transcript"),

---

[1] Kilolo Kijakazi recently became the Acting Commissioner of Social Security. Pursuant to Rule 25(d), Federal Rules of Civil Procedure, Kilolo Kijakazi should be substituted for Andrew Saul as Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. See Notice, Consent, and Reference of a Civil Action to a Magistrate Judge (Doc. No. 14), filed January 7, 2021; Reference Order (Doc. No. 18), signed January 12, 2021 and entered January 13, 2021.

filed January 7, 2021, at 125, 136, 245. Plaintiff filed an application for DIB on April 10, 2018, alleging a disability onset date of February 22, 2016.[3] Tr. at 228-29. The application was denied initially, Tr. at 124-33, 134, 148, 149-51, and upon reconsideration, Tr. at 135-46, 147, 157, 158-63.

On August 29, 2019, an Administrative Law Judge ("ALJ") held a hearing, during which she heard testimony from Plaintiff, who was represented by counsel, and a vocational expert ("VE"). See Tr. at 48-67. Plaintiff was forty-eight years old at the time of the hearing. Tr. at 51. On October 1, 2019, the ALJ issued a Decision finding Plaintiff not disabled through the date of the Decision. See Tr. at 26-37.

Thereafter, Plaintiff sought review of the Decision by the Appeals Council and submitted additional medical evidence. See Tr. at 5-6 (Appeals Council exhibit list and order), 2 (Appeals Council order describing additional evidence that was not exhibited), 43-47, 70-123 (medical evidence). On July 7, 2020, the Appeals Council denied Plaintiff's request for review, Tr. at 1-4, thereby making the ALJ's Decision the final decision of the Commissioner. On August 12, 2020, Plaintiff commenced this action under 42 U.S.C. § 405(g) by timely filing a

---

[3] Although actually filed on April 10, 2018, see Tr. at 228, the protective filing date for the DIB application is listed elsewhere in the administrative transcript as April 9, 2018, see, e.g., Tr. at 124, 136.

Complaint (Doc. No. 1), seeking judicial review of the Commissioner's final decision.

On appeal, Plaintiff argues generally that the ALJ's Decision is not supported by substantial evidence. See Memorandum in Support (Doc. No. 20; "Pl.'s Mem."), filed February 19, 2021, at 6-9. Within this general argument, Plaintiff asserts that the ALJ erred in failing to indicate the weight, if any, that she assigned to the opinion of Ciceron Lazo, M.D., a consultative examiner. Id. at 7. Plaintiff also contends the ALJ erred in self-interpreting a MRI dated July 25, 2019 without any of the medical experts being aware of or opining about it. See id. at 7-9. Plaintiff further asserts the ALJ erred in failing to discuss whether Plaintiff requires an assistive device based upon the findings in the July 25, 2019 MRI. Id. at 8. Finally, Plaintiff argues the ALJ erred in evaluating his subjective complaints. Id. at 8-9. Responding to Plaintiff's arguments, Defendant on April 21, 2021 filed a Memorandum in Support of the Commissioner's Decision (Doc. No. 21; "Def.'s Mem."). After a thorough review of the entire record and consideration of the parties' respective memoranda, the undersigned finds that the Commissioner's final decision is due to be affirmed.

## II.   The ALJ's Decision

When determining whether an individual is disabled,[4] an ALJ must follow the five-step sequential inquiry set forth in the Code of Federal Regulations ("Regulations"), determining as appropriate whether the claimant (1) is currently employed or engaging in substantial gainful activity; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals one listed in the Regulations; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy. 20 C.F.R. § 404.1520; see also Simon v. Comm'r, Soc. Sec. Admin., 7 F.4th 1094, 1101-02 (11th Cir. 2021) (citations omitted); Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004). The claimant bears the burden of persuasion through step four, and at step five, the burden shifts to the Commissioner. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

Here, the ALJ followed the five-step sequential inquiry. See Tr. at 28-37. At step one, the ALJ determined Plaintiff "has not engaged in substantial gainful activity since February 22, 2016, the alleged onset date." Tr. at 28 (emphasis and citation omitted). At step two, the ALJ found that Plaintiff "has the following severe impairments: herniated disc, left rotator cuff disorder and

---

[4] "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

- 4 -

obesity." Tr. at 28 (emphasis and citation omitted). At step three, the ALJ ascertained that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 [C.F.R.] Part 404, Subpart P, Appendix 1." Tr. at 30 (emphasis and citation omitted).

The ALJ determined that Plaintiff has the following residual functional capacity ("RFC"):

> [Plaintiff can] perform light work as defined in 20 [C.F.R. §] 404.1567(b) except that [Plaintiff] can only occasionally push/pull, stoop, kneel, crouch and crawl; he must avoid climbing and exposure to hazards; and, requires the option to change positions between sitting and standing, while remaining on task at his workstation, performing job duties from either the seated or the standing position.

Tr. at 30 (emphasis omitted).

At step four, the ALJ relied on the testimony of the VE and found that Plaintiff "is unable to perform any past relevant work" as a "construction worker and a truck driver." Tr. at 35 (some emphasis and citation omitted). At the fifth and final step of the sequential inquiry, after considering Plaintiff's age ("44 years old . . . on the alleged disability onset date"), education ("at least a high school education"), work experience, and RFC, the ALJ again relied on the VE's testimony and found that "there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform," such as "Gate attendant," "Parking lot cashier," and "Assembler, hospital products." Tr. at 36

(some emphasis and citation omitted). The ALJ concluded Plaintiff "has not been under a disability . . . from February 22, 2016, through the date of th[e D]ecision." Tr. at 37 (emphasis and citation omitted).

### III.  Standard of Review

This Court reviews the Commissioner's final decision as to disability pursuant to 42 U.S.C. § 405(g). Although no deference is given to the ALJ's conclusions of law, findings of fact "are conclusive if . . . supported by 'substantial evidence.'" Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998)). "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)). The substantial evidence standard is met when there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Falge, 150 F.3d at 1322 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)); see also Biestek v. Berryhill, 139 S.Ct. 1148, 1154 (2019); Samuels v. Acting Comm'r of Soc. Sec., 959 F.3d 1042, 1045 (11th Cir. 2020) (citation omitted). It is not for this Court to reweigh the evidence; rather, the entire record is reviewed to determine whether "the decision reached is reasonable and supported by substantial evidence." Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991) (citation omitted). The decision reached by the Commissioner must be affirmed if it is

supported by substantial evidence—even if the evidence preponderates against the Commissioner's findings. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam).

## IV.  Discussion

As summarized earlier, Plaintiff contends the ALJ erred in failing to indicate the weight, if any, that she assigned to the opinion of Dr. Lazo, a consultative examiner. Pl.'s Mem. at 7. Plaintiff also asserts the ALJ erred in self-interpreting a MRI dated July 25, 2019 without any of the medical experts being aware of or opining about it. See id. at 7-9. Plaintiff further contends the ALJ erred in failing to discuss whether Plaintiff requires an assistive device based upon the findings in the July 25, 2019 MRI. Id. at 8. Finally, Plaintiff argues the ALJ erred in evaluating his subjective complaints. Id. at 8-9.

Responding to these arguments, Defendant contends: 1) the ALJ did not err with respect to Dr. Lazo's opinion because the ALJ was not required to assign weight to the opinion and because the doctor did not actually issue a "medical opinion" as defined in the applicable Regulations, Def.'s Mem. at 10-11; 2) the ALJ did not err with respect to the July 2019 MRI and findings of other medical doctors because the ALJ was not required to state how the specific July 2019 MRI impacted their opinions but did so anyway, id. at 11-13; 3) the ALJ did not err in considering the MRI without a supporting medical opinion, id. at 13-14; 4) the ALJ did not err in electing not to address whether Plaintiff

needs an assistive device based on the MRI findings, id. at 14-15; and 5) the ALJ did not err in evaluating Plaintiff's subjective complaints, id. at 15-18.

Defendant also contends, separately, that Plaintiff has insufficiently developed his arguments, and they should be deemed waived because Plaintiff does not cite any legal authority to support them. Def.'s Mem. at 7. The Court's Scheduling Order (Doc. No. 17) specifically required Plaintiff to "identify with particularity the grounds upon which the administrative decision is being challenged" and to "support[ such challenges] by citation to the record of the pertinent facts and by citations of the governing legal standards." Id. at 1. The Scheduling Order warned: "Any contention for which these requirements are not met is subject to being disregarded for insufficient development." Id.

Defendant is correct that Plaintiff does not cite any legal authority in support of his alleged points of error. See Pl.'s Mem. at 6-9. Further, Plaintiff's Memorandum is organized in such a fashion as to make it difficult to determine what points of error he alleges, because they are not separated in any way from the general argument of the ALJ's Decision not being supported by substantial evidence, and because they are not raised with much particularity. See id. For example, the argument about Dr. Lazo is raised in a single sentence, is embedded within other alleged points of error, and contains no citation to the record or legal authority: "The ALJ does summarize the medical opinion from

Dr. Lazo from January 2018 but does not indicate the weight, if any, that she gave to that opinion." Id. at 7.

The manner in which Plaintiff raises the alleged points of error is violative of the Scheduling Order. For this reason, the Court could disregard the arguments for insufficient development. In the interest of justice, however, they will be considered.[5]

### A. Governing Legal Authority

The SSA revised the rules regarding the evaluation of medical evidence for claims filed on or after March 27, 2017. See Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5844 (January 18, 2017); see also 82 Fed. Reg. 15,132 (March 27, 2017) (amending and correcting the final Rules published at 82 Fed. Reg. 5,844). Because Plaintiff filed his DIB application after that date, the undersigned applies the revised rules and Regulations.

Under the new rules and Regulations, "A medical opinion is a statement from a medical source about what [the claimant] can still do despite [his or her] impairment(s) and whether [the claimant] ha[s] one or more impairment-related limitations or restrictions in the following abilities:" 1) the "ability to

---

[5] Plaintiff's counsel, an experienced attorney in social security disability appeals, is warned that future violations of the Court's Scheduling Orders may not be treated in the same manner.

perform physical demands of work activities"; 2) the "ability to perform mental demands of work activities"; 3) the "ability to perform other demands of work, such as seeing, hearing, or using other senses"; and 4) the "ability to adapt to environmental conditions." 20 C.F.R. § 404.1513(a)(2); see also 20 C.F.R. § 404.1502 (defining "[a]cceptable medical sources"). An ALJ need not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . . , including those from [the claimant's] medical sources." 20 C.F.R. § 404.1520c(a). The following factors are relevant in an ALJ's consideration of a medical opinion: (1) "[s]upportability"; (2) "[c]onsistency"; (3) "[r]elationship with the claimant"; (4) "[s]pecialization"; and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of [the SSA's] disability program's policies and evidentiary requirements." 20 C.F.R. § 404.1520c(c). Supportability and consistency are the most important factors, and the ALJ must explain how these factors were considered. 20 C.F.R. § 404.1520c(b)(2). Generally, the ALJ is not required to explain how he or she evaluated the remaining factors. 20 C.F.R. § 404.1520c(b)(2). However, if the ALJ "find[s] that two or more medical opinions . . . about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same, [the ALJ must]

articulate how [he or she] considered the other most persuasive factors . . . ." 20 C.F.R. § 404.1520c(b)(3).[6]

The RFC assessment "is the most [a claimant] can still do despite [his or her] limitations." 20 C.F.R. § 404.1545(a)(1). It is used at step four to determine whether a claimant can return to his or her past relevant work, and if necessary, it is also used at step five to determine whether the claimant can perform any other work that exists in significant numbers in the national economy. 20 C.F.R. § 404.1545(a)(5). In assessing a claimant's RFC, the ALJ "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" Social Security Ruling ("SSR") 96-8P, 1996 WL 374184 at *5; see also Pupo v. Comm'r, Soc. Sec. Admin., 17 F.4th 1054, 1064 (11th Cir. 2021) (citing Schink v. Comm'r of Soc. Sec., 935 F.3d 1245, 1268 (11th Cir. 2019) (per curiam)); Swindle v. Sullivan, 914 F.2d 222, 226 (11th Cir. 1990) (stating that "the ALJ must consider a claimant's impairments in combination") (citing 20 C.F.R. § 404.1545; Reeves v. Heckler, 734 F.2d 519, 525 (11th Cir. 1984)).

---

[6] When a medical source provides multiple opinions, the ALJ is also not required to articulate how he or she evaluated each medical opinion individually. 20 C.F.R. §§ 404.1520c(b)(1), 416.920c(b)(1). Instead, the ALJ must "articulate how [he or she] considered the medical opinions . . . from that medical source together in a single analysis using the factors listed [above], as appropriate." 20 C.F.R. § 404.1520c(b)(1).

"[T]o establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain." Wilson v. Barnhart, 284 F.3d 1219, 1225 (11th Cir. 2002) (citing Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991)). "The claimant's subjective testimony supported by medical evidence that satisfies the standard is itself sufficient to support a finding of disability." Holt, 921 F.2d at 1223.

"When evaluating the claimant's subjective symptoms, the ALJ must consider such things as: (1) the claimant's daily activities; (2) the nature, location, onset, duration, frequency, radiation, and intensity of pain and other symptoms; (3) precipitating and aggravating factors; (4) adverse side-effects of medications; and (5) treatment or measures taken by the claimant for relief of symptoms." Davis v. Astrue, 287 F. App'x 748, 760 (11th Cir. 2008) (citing 20 C.F.R. § 404.1529(c)(3)(i)-(vi)). To reject the claimant's assertions of subjective symptoms, "explicit and adequate reasons" must be articulated by the ALJ. Wilson, 284 F.3d at 1225; see also Dyer, 395 F.3d at 1210; Marbury v. Sullivan, 957 F.2d 837, 839 (11th Cir. 1992).

In 2017, the SSA issued new guidance to ALJs about how to evaluate subjective complaints of pain and other symptoms. The SSA has "eliminat[ed]

- 12 -

the use of the term 'credibility' from [its] sub-regulatory policy, as [the R]egulations do not use this term." SSR 16-3P, 2017 WL 5180304, at *2 (Oct. 25, 2017). "In doing so, [the SSA has] clarif[ied] that subjective symptom evaluation is not an examination of an individual's character." Id. Accordingly, ALJs are "instruct[ed] . . . to consider all of the evidence in an individual's record when they evaluate the intensity and persistence of symptoms after they find that the individual has a medically determinable impairment(s) that could reasonably be expected to produce those symptoms." Id. "The change in wording is meant to clarify that [ALJs] aren't in the business of impeaching claimants' character; obviously [ALJs] will continue to assess the credibility of pain <u>assertions</u> by applicants, especially as such assertions often cannot be either credited or rejected on the basis of medical evidence." Cole v. Colvin, 831 F.3d 411, 412 (7th Cir. 2016) (emphasis in original).

### B. Analysis

Plaintiff first contends the ALJ erred by failing to state the weight assigned to Dr. Lazo's opinion. Pl.'s Mem. at 7. Dr. Lazo performed a consultative examination and authored a report dated January 16, 2018 and signed January 23, 2018. Tr. at 415-17. Dr. Lazo also submitted a range of motion report dated January 22, 2018. Tr. at 413-14. Although Dr. Lazo summarized his examination findings and Plaintiff's various ranges of motion, he did not opine on how Plaintiff's physical impairments effect his ability to

perform specific work-related functions. See Tr. at 415-17, 413-14. For this reason, Defendant contends Dr. Lazo did not author a "medical opinion" and the ALJ was not required to state its persuasiveness. Def.'s Mem. at 10-11. However, Dr. Lazo did opine, to a degree, as to "what [Plaintiff] can still do despite [his] impairment(s)," and arguably the findings on examination and range of motion apply to Plaintiff's "ability to perform physical demands of work activities." 20 C.F.R. § 404.1513(a)(2). So, the undersigned assumes without deciding that Dr. Lazo's reports qualify as medical opinions.

The ALJ summarized in some detail Dr. Lazo's consultative examination findings, concluding that Plaintiff "was diagnosed with left shoulder tendinosis and mild arthritis impingement with mild decreased range of motion with pain, low back pain due to degenerative arthritis and degenerative disk disease of lumbar spine with mildly decreased range of motion, and severe obesity with a body mass index (BMI) of 37." Tr. at 32. Although the ALJ did not state the "weight" she assigned Dr. Lazo's opinions, she was not required to under the new Regulations. See 20 C.F.R. § 404.1520c(a). The ALJ did not specifically discuss the relevant factors in evaluating Dr. Lazo's findings, but it is clear in context that the ALJ accepted the findings and found them supported by the balance of the evidence. The ALJ did not reversibly err with respect to Dr. Lazo's opinions.

Plaintiff next contends the ALJ erred in self-interpreting a July 2019 MRI without supporting medical opinions. Pl.'s Mem. at 7-9. Plaintiff posits that perhaps with the 2019 MRI findings, he would be reduced to the ability to perform only sedentary work (rather than light work with additional restrictions as the ALJ found), or maybe even no work at all. Id. at 8. Plaintiff does not cite any authority for the contention that a medical expert had to review the MRI. See id.

The ALJ did not self-interpret the MRI; rather, the ALJ summarized the findings of the MRI. Compare Tr. at 34 (summarizing findings), with Tr. at 692 (MRI findings and impressions). Further, the ALJ specifically found as to two of the medical opinions, those of non-examining physician Frank Walker, M.D. and treating physician Denise Agatep, M.D., that they were "eroded by the recent MRI showing lumbar nerve impingement." Tr. at 35. In other words, the ALJ recognized that the 2019 MRI contained significant findings that required more limitations than Dr. Walker and Dr. Agatep found. The ALJ's Decision reflects adequate consideration of the July 2019 MRI, and the ALJ was not required to employ another expert to apply its findings to Plaintiff's ability to perform work-related functions in determining Plaintiff's RFC. The ALJ did not reversibly err in this regard.

Third, Plaintiff argues that the ALJ erred by failing to consider whether he needs an assistive device in light of the July 2019 MRI findings. Pl.'s Mem.

at 8. During the examination by Dr. Lazo, however, it was noted that Plaintiff's "gait and station do not appear to be impaired" and that Plaintiff "did not require the use of [an] assistive device to ambulate." Tr. at 417. Plaintiff did appear at the hearing with a walker, and he testified he had been using it for "about two or three months" as a result of a recent fall. Tr. at 53. The ALJ recognized this testimony in the Decision, Tr. at 31, but found Plaintiff's allegations "concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record," Tr. at 34. Plaintiff points to no objective medical evidence showing he actually has a need for an assistive device, and indeed, he testified that the walker had not been prescribed by a doctor. Tr. at 53. In an apparent abundance of caution, the ALJ asked the VE about a walker at the hearing, and the VE testified that an individual who needed to get to and from a workstation with a walker could still perform the jobs identified. Tr. at 64. Thus, even if Plaintiff occasionally relies on a walker to get from place to place, the ALJ's findings are unaffected. The ALJ did not err in electing not to find that Plaintiff requires an assistive device.

Finally, Plaintiff challenges the ALJ's findings regarding his subjective complaints of pain. See Pl.'s Mem. at 8-9. In doing so, Plaintiff criticizes the ALJ's reliance on 2016 "office notes," rather than later medical evidence, to find that Plaintiff's allegations about the effects of his symptoms are not entirely

consistent with the evidence. See id. The ALJ did rely, to a degree, on physical therapy notes from 2016 in addressing Plaintiff's testimony about the effects of his impairments. See Tr. at 34. But, the ALJ also relied on "statements by [Plaintiff] and others, observations regarding activities of daily living, and alternations of usual behavior or habits." Tr. at 34. Further, the ALJ found as to the overall medical evidence that it "does not support the severity" alleged because "treatment has been essentially routine and conservative in nature"; "[t]he medical evidence of record reflects minimal objective findings of disabling limitations"; and "when [Plaintiff] is maintained on his medication, his symptoms have improved significantly, according to both his subjective reports and the objective evidence documented during those times." Tr. at 35. Plaintiff does not challenge these findings. In sum, the ALJ's Decision reflects that she did not overly rely on the 2016 physical therapy notes to the exclusion of other evidence in addressing Plaintiff's testimony. The ALJ did not err in evaluating Plaintiff's subjective complaints.

## V.  Conclusion

After a thorough review of the entire record, the undersigned finds that the ALJ's Decision is supported by substantial evidence. Accordingly, it is

**ORDERED**:

1. The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g), **AFFIRMING** the Commissioner's final decision.

2. The Clerk is further directed to close the file.

**DONE AND ORDERED** in Jacksonville, Florida on February 25, 2022.

*James R. Klindt*
JAMES R. KLINDT
United States Magistrate Judge

kaw
Copies to:
Counsel of Record